Gregory L. Weeks, Esq., CSB No. 58584
    Email: gweeks@wknjlaw.com
Gregory K. Nelson, Esq. CSB No. 203029
    Email: gnelson@wknjlaw.com
Chandler G. Weeks, Esq., CSB No. 245503
    Email: chandlerw@wknjlaw.com
WEEKS, KAUFMAN, NELSON & JOHNSON
462 Stevens Avenue, Suite 310
Solana Beach, CA 92075
Telephone: (858) 794-2140
Facsimile: (858) 794-2141
Attorneys for Plaintiff, Red.com, Inc.

James H. Neale, (Pro Hac Vice)
Joshua D. Lichtman, CSB No. 176143
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, NY 10103-3198
Telephone: (212) 318-3000; Email: jneale@fulbright.com
Attorneys for Defendant ARRI, Inc.

James W. Spertus, Esq. (CSB No. 159825)
LAW OFFICES OF JAMES W. SPERTUS
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700; Email: Jim@spertuslaw.com
Attorneys for Defendant Michael Bravin

UNITED STATES DISTRICT COURT,

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **RED.COM, INC. dba RED DIGITAL CAMERA**, a Washington corporation,<br><br>              Plaintiff,<br><br>     vs.<br><br>**ARRI INC.**, a Delaware corporation, and **MICHAEL BRAVIN**, an individual,<br><br>              Defendants. | Case No. SACV 11-01972 CJC (ANx)<br><br>JOINT RULE 26(f) REPORT<br><br>Honorable Cormac J. Carney<br>_____<br><br>Scheduling Conference:<br>April 30, 2012<br><br>[Court Appearance Requested by Defendants] |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1, and this Court's Notice of Intent to Schedule the Case on April 30, 2012, counsel for Red.com, Inc. ("RED"), counsel for ARRI Inc. ("ARRI") and counsel for Michael Bravin ("Bravin"), participated in an early meeting of counsel as prescribed, and hereby submit this Joint Rule 26(f) Report.

Due to the parties' apparent dispute concerning staging of discovery, Defendants request that the Court conduct an in-court conference with counsel to further address this matter rather than just issue a Scheduling Order.

## I.    SYNOPSIS OF PARTIES' CLAIMS AND DEFENSES

### A.    RED's Statement

Bravin is a former employee of a third party named BandPro. Between sometime in 2009 and the summer of 2010, Bravin accessed, without authority, the email account of the president of BandPro. At least some of these unauthorized accesses to the email account of the president of BandPro were done while Bravin was the vice-president of ARRI, a competitor of RED. RED is informed and believes, and alleges, that among other reasons, Bravin accessed these emails to obtain trade secrets related to RED products, marketing, and business plans to provide a competitive advantage to ARRI as it released its competing camera. Bravin pled guilty to charges brought by the U.S. government of criminal activity arising from these acts. These acts form the basis of claims by RED for unfair competition under California Business & Professions Code § 17200, invasion of privacy, conversion, and misappropriation of trade secrets. RED seeks damages and injunctive relief.

Additionally, RED alleges that ARRI and Bravin engaged in false advertising. Specifically, Bravin made false statements in a public forum to demean the RED products while embellishing the ARRI products. Other statements were made in advertising by ARRI. RED seeks damages and injunctive relief.

… … …

Finally, RED alleges that employees or agents of ARRI engaged in unfair acts by damaging a RED camera on the set of a movie. This gives rise to claims by RED of interference, negligence, conversion, and trespass to chattels. RED seeks compensatory damages and injunctive relief for these claims as well.

**B.    ARRI's Statement**

Beginning January 18, 2010, ARRI employed Bravin as Vice President for Market Development. ARRI suspended Bravin in September 2010 promptly upon learning from federal investigators of his alleged accessing without authorization Band Pro emails during the time he was employed by ARRI, and ARRI terminated his employment shortly thereafter. ARRI understands that Bravin later, in August 2011, agreed to plead guilty to a misdemeanor offense for accessing and reading without authorization certain emails on Band Pro's server and to pay $20,000 to Band Pro in full restitution of any losses it may have incurred due to such conduct.

Bravin's Plea Agreement made no mention of ARRI or RED or any alleged RED trade secrets or confidential information purportedly either contained on the Band Pro server or accessed by Bravin. ARRI is informed and believes that, during the relevant time, Band Pro had no business relationship with RED and, in fact, competed with both RED and ARRI, as Band Pro was at that time the exclusive distributor for Sony's digital cameras, which competed with the digital cameras sold by both ARRI and RED. Accordingly, ARRI is informed and believes it is highly unlikely RED would have sent any emails containing "trade secrets" to Band Pro.

ARRI denies that it knew of, condoned, or encouraged Bravin to access any Band Pro emails. ARRI denies that Bravin communicated to it, or that ARRI in any way relied on, purported RED trade secrets or confidential information that Bravin may have seen as a result of his accessing Band Pro's email server. ARRI denies that Bravin forwarded any RED emails he accessed on the Band Pro server

to anyone at ARRI.  ARRI also specifically denies that Bravin communicated to it, or that ARRI any way used, purportedly confidential information supposedly obtained by Bravin regarding RED products or marketing in order to develop or market ARRI's competing ALEXA camera.

In fact, ARRI had announced and demonstrated the features and specifications of its ALEXA camera in September 2009, months before it even hired Bravin.  Bravin's responsibilities at ARRI did not include the design of the ALEXA camera, which was substantially complete before he joined the company, and long before RED demonstrated or released its competing EPIC camera.

In short, ARRI denies that RED emailed any purported trade secrets within the meaning of Cal. Civ. Code § 3426 to Band Pro, that Bravin accessed RED trade secrets on the Band Pro server, that any such trade secrets of RED were communicated to ARRI or that they were misappropriated by ARRI in the design or marketing of its ALEXA camera.

As to RED's remaining claims, ARRI denies the allegations as more fully set forth in its detailed Answer filed February 14, 2012 (Dkt. # 8.)  In particular, as to RED's allegations of false advertising by ARRI, ARRI's position is that the subject statements are either (i) true statements of fact, (ii) accurate statements (or re-statements) of opinion, or (iii) false attribution by RED to ARRI of statements that ARRI did not make.

**C.     Bravin's Statement**

From 1994 through 2009, Mr. Bravin was employed by Band Pro, which is a reseller of motion picture camera equipment.  During Mr. Bravin's employment at BandPro, Band Pro's principal, Amnon Band, gave Mr. Bravin the username and password for Mr. Band's email account and requested that Mr. Bravin access that email account for a wide variety of purposes.  In 2009, Mr. Bravin resigned from Band Pro to become the Vice President of Market Development at Defendant ARRI, which is a manufacturer of motion picture cameras.

When Mr. Bravin left BandPro, Mr. Band became angry.  Mr. Bravin learned from colleagues in the industry that Mr. Band was saying negative things about Mr. Bravin, including statements in defamatory emails to Mr. Bravin's colleagues.  To find out what Mr. Band was saying about him, Mr. Bravin used the login information that Mr. Band had provided to him to access Mr. Band's email account and look at statements about Mr. Bravin that Mr. Band was saying. Since Mr. Bravin had left Mr. Band's employ, these accesses of Mr. Band's email account were unauthorized and wrongful.  When Mr. Band discovered that Mr. Bravin had accessed his email account without authorization, Mr. Band retained the former Chief of the Computer Crimes section of the United States Attorney's Office to investigate the matter and refer it to the United States Attorney's Office in the Central District of California for criminal prosecution.  There was no dispute that it was wrongful for Mr. Bravin to log into Mr. Band's email account to monitor what Mr. Band was saying about him, so Mr. Bravin waived his constitutional rights and pled guilty to a single-count, misdemeanor Information that charged Mr. Bravin with this criminal conduct.

Seizing upon the opportunity to obtain a wide variety of tactical business advantages from Defendant ARRI (Mr. Bravin's subsequent employer), Plaintiff RED filed the instant action alleging a variety of causes of action involving theft of trade secrets and corporate espionage related to Mr. Bravin's unlawful access of Mr. Band's email account.  RED is a direct competitor of ARRI, and through the instant action is trying to take advantage of Mr. Bravin's criminal conviction. RED's claims are based on the allegations that RED purportedly sent emails to Mr. Band containing trade secret information during the same period of time that Mr. Bravin allegedly accessed Mr. Band's email account without authorization. Such causes of action will fail because, under the facts of this case, any emails sent by RED to Mr. Band would, by definition, not constitute trade secrets.  More importantly, Mr. Bravin never reviewed a single email related to RED, and never

shared a single email related to RED with his new employer, ARRI.  There simply was no such conduct.  During the meet and confer process preceding this Joint Rule 26 statement, counsel for Mr. Bravin repeatedly asked counsel for RED to identify any allegedly misappropriated trade secrets as required under California Civil Procedure Code section 2019.210, but RED still has not identified a single misappropriated trade secret.

RED has also asserted claims against Mr. Bravin related to statements purportedly made by Mr. Bravin on a web-blog.  The web-blog statements pertained to the inferiority of RED's cameras to ARRI's cameras.  None of those statements, however, are actionable.   These alleged statements of opinion are not statements of fact capable of being proved false, or cannot reasonably be interpreted as stating facts at all.  All of the statements at issue are immaterial, are true or substantially true, are not commercial speech, are not made in a commercial advertisement or promotion, are opinions, and are protected speech under the First Amendment.

## II.    LEGAL ISSUES

The key legal issues in this case are: (1) establishment of a protected trade secret to RED; (2) alleged misappropriation of trade secrets by ARRI and Bravin; (3) whether   RED's first, second, third, ninth and tenth causes of action are preempted by Cal. Civ. Code § 3426.7; (4) alleged conversion; (5) whether RED had privacy rights in emails sent to Band Pro and on the Band Pro server; (6) alleged invasion of privacy by Bravin; (7) falsity or veracity of statements made by Bravin on Reduser; (8) whether statements made by Bravin in the Reduser forum constitute "advertising" within the meaning of the Lanham Act or the California statutes sued under; (9) falsity or veracity of statements made by ARRI in advertising; (10) viability of RED's claims of tortious interference with an allegedly advantageous prospective acquisition by RED of Band Pro, which RED asserts it chose not to purchase after learning of Bravin's accessing of Band Pro

emails; (11) alleged interference by ARRI related to use of RED camera on the set of *Hansel & Gretel;* (12) alleged negligence by ARRI related to use of RED camera on the set of *Hansel & Gretel*; (13) alleged trespass to chattels by ARRI related to use of RED camera on the set of *Hansel & Gretel* in Germany*;* (14) attribution of acts of Bravin to ARRI; (15) alleged willfulness of the acts complained of; (16) damages; (17) viability of RED's prayer for "disgorgement" under the California Unfair Competition Law under the first and sixth causes of action; and (18) whether any of Defendants' affirmative defenses bar, foreclose or reduce the relief sought by Plaintiff.

## III.   ADDITIONAL PARTIES AND AMENDMENT

RED is contemplating adding Jim Jannard and potentially other individuals as named plaintiffs in this lawsuit, as well as some additional claims. The parties respectfully reserve the right to add parties or amend by way of motion to the Court if evidence presents itself.  ARRI proposes the Court set a deadline for adding parties of July 1, 2012.

RED understands that other third parties have already and may yet still initiate litigation related to Bravin's accessing of Band Pro emails after he left employment with Band Pro.

## IV.   INSURANCE

None of the parties is aware of any applicable insurance policy.

## V.   MOTIONS

Aside from dispositive motions that may take place in the future, none of the parties anticipates any specific motion at this time.  All the parties anticipate filing motions for summary judgment after sufficient discovery has occurred. ARRI anticipates, in particular, an early motion for partial summary judgment directed at all or part of RED's trade secret claims following initial discovery (outlined in ARRI's proposed staging of discovery discussed below) regarding Bravin's alleged accessing of Band Pro emails that RED alleges contained RED

trade secrets.  ARRI anticipates a contemporaneous motion for judgment on the pleadings and/or for partial summary judgment directed at: (i) RED's first, second, third, ninth and tenth causes of action (all of which are premised on alleged misappropriation of RED trade secrets through Bravin's alleged accessing of Band Pro emails), on the basis that such claims are preempted by Cal. Civ. Code § 3426.7; and (ii) RED's tortious interference claims. Mr. Bravin also anticipates filing similar motions for summary judgment and/or for judgment on the pleadings.   The parties also respectfully reserve the right to file any appropriate motion, as it may arise during the course of litigation.

## VI.   DISCOVERY AND EXPERTS

### Discovery Issues

### 1.   Discovery from U.S. Attorney

Bravin was the subject of a criminal action brought by the federal government related to his unlawful accessing of emails of third party Band Pro. RED alleges that some of the Band Pro emails accessed by Bravin were from Plaintiff. The parties anticipate the need to obtain discovery and evidence from the U.S. Attorney's office related to that matter and/or to obtain approval from the U.S. Attorney's office for materials produced by the Government to Bravin's counsel in the criminal case (pursuant to a confidentiality duty), to be used and produced in this action, subject to the entry of an appropriate Protective Order herein and/or the parties' agreement to adhere to any additional confidentiality requirements of the U.S. Attorney.   This request may take some time and will affect the process and timing of discovery at the outset of this case.

### 2.   Subjects/Phases of Discovery and Trade Secret Designation

### A.   RED's Position

RED proposes that discovery be open on all issues identified above at this time, finding that there is no reason to delay any parts of discovery or prejudice RED from its right to take discovery of the Defendants where much of the

evidence of wrongdoing is in the possession of the Defendants.

In contrast, ARRI proposes that the Court require RED to first respond to interrogatory and document production discovery, without objection no less, prior to the Defendants having to respond to RED's discovery. The premise for this is C.C.P., § 2019.210, which requires the identification of a trade secret in California state court cases.  RED does not contend that it is excused from the obligation to put Defendants on fair notice of its alleged trade secret. However, Defendants are asking RED to identify its trade secrets, while withholding from RED the right to determine what information Bravin stole from BandPro, and by extension from RED. For example, in this case, RED is informed that Bravin hacked several thousand emails from the BandPro server. While RED is aware of some of the information that was accessed by Bravin from these emails, RED has not had the opportunity to review all the emails that Bravin hacked. Consequently, RED would be prejudiced to have to identify only a portion of its trade secrets learned by ARRI's vice-president while there might be others that should be included. While RED can identify in an appropriate manner its trade secrets, including what its discussed with BandPro, it cannot identify those relevant portions that were stolen by Bravin and ARRI. Accordingly, it is completely foreseeable that whatever designation RED provides at this point in time will need to be amended once discovery is obtained from the Defendants as to which emails and other communicated trade secrets Bravin absconded. Moreover, there is no reason that RED should be barred from asserting relevant objections to the proffered discovery.

Thus, RED proposes that discovery got forward on equal footing. ARRI has propounded discovery related to the identification of RED's trade secret, responses to which are due on or about May 4, 2012. As noted above under Discovery Issues,  Red is hopeful that all emails accessed by Bravin from Band Pro will be included in Discovery from the U.S. Attorney.  However, as also noted

above, "this process may require some time."  Red does not feel it is appropriate that discovery on matters unrelated to trade secret issues be delayed as requested by ARRI in its position below.

### B.  ARRI's Position

ARRI respectfully requests that the Court issue an order, pursuant to its inherent authority and Fed R. Civ. P. 26 and the decisions discussed below, issue an order to structure discovery in this action, which primarily concerns alleged trade secret misappropriation, so as to require RED to promptly disclose (i) the emails to or from Band Pro that RED contends were unlawfully obtained by Bravin and (ii) the asserted RED trade secret(s) that those emails allegedly contained.  Such disclosure should occur **before** RED is permitted to undertake burdensome and broad-ranging discovery of ARRI on proprietary and commercially sensitive information regarding the development and marketing of the ARRI ALEXA camera, which competes directly with RED's EPIC camera and other products.[1]

Any discovery that RED thereafter takes of ARRI concerning its trade secret and other claims predicated on Bravin's allegedly unauthorized access to Band Pro emails should be limited to any actual trade secrets identified by RED and contained in such emails.  It is imperative that the Court structure discovery in this manner because otherwise RED intends (as indicated by its First Request for Production, attached hereto as Exhibit A) to force ARRI to undergo a burdensome and unfocused fishing expedition into highly sensitive matters relating to ARRI's product design and marketing plans and strategies, which may be wholly irrelevant depending on what specific alleged trade secrets, if any, RED identifies.

---

[1] Contrary to RED's assertion that, under ARRI's proposed structure, discovery on "matters unrelated to trade secret issues [would] be delayed," the requested stay only applies to RED's trade secret misappropriation claims, and would not bar RED from proceeding with discovery on its other claims now.

(*See*, *e.g.*, Ex. A, Requests Nos. 8, 11-19, 29, 44-45 and 48-50.)

To support its repeated yet vague allegations that Bravin and ARRI "stole" emails containing its alleged trade secrets, RED must already know which emails it sent to or received from Band Pro (and, thus, could potentially have been accessed by Bravin) and what specific trade secrets those emails allegedly contained.  RED does not require burdensome discovery of its competitor, ARRI, to obtain that information.

ARRI does not, as RED incorrectly contends, seek to "delay" any discovery to which RED is entitled. Rather, ARRI seeks to contain discovery within proper bounds and to preclude a competitor's unjustified fishing expedition that would be burdensome, expensive and potentially prejudicial in ways against which no confidentiality order could supply adequate  protection.

The Court has the inherent power pursuant to Rule 26(c) to manage the discovery process.  *Campbell Indus v. M/V Gemini*, 619 F. 2d 24, 27 (9th Cir. 1980).  This includes ordering a plaintiff to disclose with reasonable particularity the trade secrets at issue in a misappropriation action.  *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("Ordering the listing of trade secrets is a common requirement.")  Thus, federal courts in California have routinely required trade secret plaintiffs to provide a disclosure of the trade secrets at issue similar to that required in a Cal. Code Civ. Proc. §2019.210 trade secret designation **before** the plaintiff may commence discovery on trade secret issues. [2]  *Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment*

---

[2] RED may suggest that ARRI is improperly arguing that Cal. Code. Civ. Proc. §2019.210 governs the conduct of this action in federal court.  This is a red herring.  While the Ninth Circuit has not decided if Section 2019.210 applies in federal court and district courts have come to differing conclusions [*compare Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 986-992 (S.D. Cal. 1999), *with Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949, at *2-3 (E.D. Cal. Jan. 29, 2007)], ***no court*** has held that the district

*(Shanghai) Co., Ltd.*, 2008 WL 183520 *1 (N.D. Cal. 2008) ("court imposed the requirement that Plaintiff disclose to Defendants all trade secrets it is alleging have been misappropriated solely as a matter of case management"); *Jardin v. DATallegro*, 2011 WL 3299395 * 4 (S.D. Cal. July 29, 2011) (ordering defendants to "'propound one (1) special interrogatory' that essentially asks [plaintiff] to identify the confidential information he alleges [defendant] misappropriated," that plaintiff would answer before the parties commenced other discovery); *N. Am. Lubricants Co. v. Terry*, 2011 WL 5828232 *5-6 (E.D. Cal. 2011) (requiring plaintiff to respond to interrogatory requesting the identity of the trade secrets allegedly misappropriated at the outset of litigation.)

Sound policy and the efficient use of the Court's and the parties' resources dictate the early designation by RED of the trade secrets and emails that ARRI allegedly misappropriated, before the parties conduct full blown discovery on the misappropriation claim.   Imposing "the requirement that Plaintiff disclose to Defendants all trade secrets it is alleging have been misappropriated solely as a matter of case management" will:   "1) assist both the parties and the court *in determining the appropriate scope of discovery and in determining whether particular discovery requests fall within that scope*; and 2) avoid any disputes regarding whether or not Plaintiff is using the discovery process as a means to obtain the Defendant's trade secrets." *Applied Materials, Inc.*, 2008 WL 183520 at *1 (emphasis added); *Computer Economics, Inc.*, 50 F. Supp. 2d at 985 (explaining that requiring the plaintiff to identify the alleged trade secrets at issue before conducting forcing the defendant to undergo discovery is appropriate for

---

court does not have the inherent authority to order the early designation of trade secrets prior to the commencement of discovery. *See Applied Materials, Inc.*, 2008 WL 183520 at *1 n. 2; *Jardin v. DATallegro*, 2011 WL 3299395 at *4 (affirming magistrate's ruling that plaintiff must disclose the allegedly misappropriated trade secrets before commencing discovery ).

numerous reasons: "First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints.  Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. . . . Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. . . . Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.") (internal citations omitted).

In this case, given RED's allegations, in order to take meaningful and efficient discovery on the misappropriation claims, it is necessary to first determine: (i) exactly what RED contends constitutes its "trade secrets," and (ii) whether that information was communicated by RED to Band Pro (RED's competitor) in emails that could have been accessed by Bravin.  Absent those predicate facts, all of the other matters necessary to RED establishing its misappropriation claims (*e.g.,* that the alleged RED trade secrets (i) meet the test of Cal. Civ. Code § 3426.1(d), (ii) were actually on Band Pro's email server at the time of Bravin's unlawful access, (iii) were opened and reviewed by Bravin, (iv) were communicated by Bravin to ARRI and then (v) were utilized by ARRI in its design or marketing of the Alexa camera) would all be irrelevant.  In short, without RED first making a *prima facie* showing of what trade secrets it contends *were available on the Band Pro email server to be accessed by Bravin*, the rest is window dressing that cannot justify burdensome discovery of its competitor's confidential technical and business information.

Accordingly, before the parties incur the burden and expense of conducting full blown discovery on potentially irrelevant "second-level" matters, the Court should first order RED to provide (subject to an appropriate Protective Order) a trade secret designation that will reasonably guide and limit the scope of further discovery.  *See Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 220,

109 Cal. Rptr. 3d 27 (2010) (recognizing that determining the existence of the alleged trade secret at an early stage is critical to guiding the parties and court in litigation of a misappropriation claim, "in the sense that *until the content and nature of the claimed secret is ascertained*, it will likely be impossible to intelligibly analyze the remaining issues." (emphasis added).

RED's First Request for Production (*see* Ex. A) makes it clear that, unless this Court issues an order for staging discovery, RED intends to plunge into burdensome, invasive, extremely expensive, and almost certainly irrelevant and overbroad discovery, contrary to the principles reflected in the case law explaining how important it is to appropriately frame the scope of discovery in a trade secret case. For example, RED is demanding production of "all documents discussing RED or any of its products" (Request No. 8), and all documents "discussing" or "related to" the "pricing" (No. 11), "features" (No. 12), "marketing or advertising" (No. 13), "forecasts, business proposals or business strategies related to" (No. 44) or "profits from the sale of" (Nos. 49-50), the ARRI Alexa camera. (Ex. A, Requests Nos. 8, 11-13, 44 and 49-50.) There is no justification to permit RED to conduct this kind of overbroad and unreasonably burdensome fishing expedition, essentially seeking substantially all of ARRI's business records concerning the ALEXA camera. Only after RED sets forth what the alleged trade secrets at issue are -- and discloses the emails it sent Band Pro containing the alleged trade secrets -- will the Court and parties be able to reasonably determine how to refine and limit the scope of discovery of ARRI to align with the scope of the alleged misappropriation.

Therefore, ARRI proposes that the Court order that fact discovery be staged in the following manner:

1.    Within thirty days of the entry of the Scheduling Order, (and upon entry of a Protective Order), RED shall:

    (a)    answer without objection the three interrogatories

contained in ARRI's First Set of Interrogatories attached hereto as Exhibit B, which are narrowly targeted to call for the information required to be disclosed in a C.C.P. § 2019.210 trade secret designation; and

(b)    produce the documents sought by the seven requests contained in ARRI's First Requests for Production attached hereto as Exhibit C, which are similarly narrowly targeted to, in essence, call for the emails that RED contends it sent to Band Pro that contained its alleged trade secrets, as those specific documents would establish the universe of potential misappropriation.[3]

2.    Until RED produces the materials described in ¶ 1 above, discovery by all parties *on alleged trade secret/email access issues* will be stayed (including but not limited to requests on those issues contained in RED's First Request for Production ).

3.    Notwithstanding the other limits on trade secret discovery, Bravin's counsel will immediately begin seeking approval of the U.S. Attorney to use and/or share discovery from the Bravin criminal matter.

4.    The parties may now proceed with reasonable discovery on RED's non-trade secret/email access claims (*e.g.*, alleged false advertising and false statements made on the RedUser forum, etc.), including to

---

[3] ARRI understands RED's stated concern that it may not know at this time which (if any) of such emails were actually accessed by Bravin from the Band Pro server. However, RED certainly must know now: (a) what it contends are the trade secrets it alleges were misappropriated and (b) which emails it sent to Band Pro that contained those alleged trade secrets.

the extent such issues are addressed in RED's First Request for Production, without limitation.

## C.   **Bravin's Position**

Under California Civil Procedure Code section 2019.210 and the significant federal authority embracing section 2019.210 (cited *supra* by Defendant ARRI), RED is barred from commencing any discovery relating to its trade secret claims until it identifies with reasonable particularity the trade secrets that were allegedly misappropriated by defendants. *See also Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (citing Cal. Civ. Proc. Code § 2019.210) ("[A] California trade secrets plaintiff must, prior to commencing discovery 'identify the trade secret with reasonable particularity.' . . . To avoid the 'vague hand waiving' that the court is cautioned against, the plaintiff is burdened to make two showings. First, the plaintiff must clearly identify what the 'thing' is that is alleged to be a trade secret, and second, the plaintiff must be able to clearly articulate why that 'thing' belongs in the legal category of trade secret."). To date, although RED has begun propounding written discovery, it has not filed or served a pleading containing that information. RED contends that it cannot identify its misappropriated trade secrets until it discovers the emails that were allegedly read by Mr. Bravin. RED, however, affirmatively alleges in its Complaint: "Based on the unauthorized access and copying of emails, Bravin used confidential, proprietary information of RED to improve the Alexa camera and guide the marketing efforts of ARRI with the camera." (Complaint, ¶¶ 46, 57, 69.) RED is obviously aware of any purported trade secrets that it shared with Band Pro and RED should therefore know with particularity which of those purported trade secrets were used "to improve the Alexa camera." It is RED's burden to disclose these purported trade secrets <u>prior</u> to taking discovery. Regardless of the fact that Mr. Bravin never read any emails relating to RED and RED will not be able to establish that he did, Mr. Bravin anticipates that once

RED fulfills its disclosure obligations, it will be easily determined that RED never disclosed any information to Band Pro that constitutes a trade secret and it will easily be determined that none of this information was ever used "to improve the Alexa camera," which was already released prior to the alleged disclosure of the purported trade secret information.

Mr. Bravin respectfully requests that the Court order RED to comply with CCP § 2019.210 and order discovery related to RED's trade secret claims stayed until there is compliance by RED. Although most of RED's causes of action are derivative of RED's trade secret claims, Mr. Bravin has no objection to RED taking discovery at this time on its additional claims, specifically those claims related to Mr. Bravin's alleged statements on the RedUser web blog board regarding the inferiority of RED's products.

### 3. **Potential Requested Discovery from Germany**.

### A. **RED's Position**

RED understands and believes that the parent company of the Defendant ARRI is located in Germany.  It may become necessary, during the course of discovery, to conduct some discovery of the parent company and/or add the parent company as a Defendant. For example, if it is learned that Bravin not only shared RED's trade secrets with employees in Burbank but also in Germany, the information obtained and by whom in Germany would be very relevant. RED is not aware of any specific facts to this end, at this point, as such evidence is clearly only in the possession of Defendant ARRI. However, if evidence in Germany does become relevant, it is foreseeable that the discovery process may require additional time to conform with reasonable discovery processes.  RED only desires to make the Court aware of this potential situation, whereas ARRI apparently seeks an preliminary order from the Court forbidding RED from conducting discovery in Germany when this is not even a ripe issue at this point in time. If it does become a realistic concern in the future for ARRI, one would

expect that Defendant would be capable of seeking a protective order if necessary.

### B.   ARRI's Position

The headquarters of ARRI's indirect parent company, and of the affiliated company from which ARRI purchases the ALEXA and other cameras for resale in the United States, are located in Germany.  RED contends these facts will necessitate certain discovery procedures, which may also a require longer time for discovery than the Court might normally expect to grant the parties.

ARRI does not concede that potentially relevant documents exist "in Germany" or that discovery in Germany is necessary or appropriate to the issues in this case.  ARRI reserves all rights to object in the event that RED attempts to seek discovery "from Germany," including, but not limited to, that the discovery is irrelevant and/or unduly burdensome, the data is not within ARRI's possession custody or control, and/or the data is cumulative of discovery that ARRI itself can provide.  ARRI is separate from the German ARRI entities, does not speak for them herein, and notes that they may have separate objections to discovery RED may seek, including but not limited to lack of jurisdiction.

ARRI proposes that the parties start by examining data and information that is available in the United States and, only if it then appears necessary, revisit the issue of discovery "from Germany."  Staging discovery in this manner may well obviate any issue in this regard as discovery "from Germany" would be moot if initial discovery in the United States reflects that either (i) RED did not communicate any trade secrets to Band Pro, or (ii) Bravin did not access any Band Pro emails containing any purported RED trade secrets, or (iii) Bravin did not communicate any purported RED trade secrets he may have learned by improperly accessing Band Pro emails to anyone at ARRI.

### 4.   Initial Disclosures

The parties have agreed to exchange initial disclosures within two (2) weeks of the Court's entry of a Scheduling Order.

5.  **Limitations On Discovery**

The parties do not anticipate the need to modify the provisions of the Federal Rules regarding interrogatories, requests for admissions or depositions in this case, at this time, but reserve the right to request such modifications if necessary.

6.  **Electronically Stored Information**

A.  **RED's Position**

During their meet and confer conference, the parties agreed to produce electronically stored information ("ESI") in their native format, as far as is reasonably possible, as requested by the other side. Each party would reserve the right to request specific electronic searches of the other party's ESI. Unless and until requested, or the completion of this case, both parties have agreed to preserve all relevant ESI and documents.

ARRI's proposed discovery production imposes an unrealistic burden on the parties. Their proposal requires specific forms and creation of documents and formats that do not already exist. The added time and costs of doing so are not warranted.

RED would propose that the parties produce documents in hardcopy format and in native format as available. If any other party wants production of electronic documents in any other form or format, that party should be permitted to request and pay itself for such production.

B.  **ARRI's Position**

The parties did not agree during their meet and confer that all ESI be produced in native format. The parties did discuss that option with respect to certain files, such as Excel spreadsheets, but ARRI stated that some file types, in particular email files and attachments, are not suited to production in native format. Neither, we have learned, are other file formats, such as Word, PowerPoint and Adobe Acrobat. Problems with native production include the

absence of Bates numbers on each page, the possibility that content may be altered inadvertently or otherwise by receiving parties, and resulting complications and burdens in establishing the authenticity of documents used in depositions, motions and hearings.  In addition, working with files produced in native format is difficult for both producing and reviewing parties, as the format does not allow for highlighting and annotating document images. Accordingly, the generally accepted and most expeditious and economical way of producing ESI, in a form all parties can readily use, is as set forth below. Contrary to RED's contentions, this is the standard in which virtually every ESI vendor commonly extracts files, and it does not create "new" documents, any more than does printing them out in hard copy.

ARRI requests that the Court order production of ESI as follows:

Unstructured or custodial documents (e.g. e-mail, Word, Excel, PowerPoint) should be exchanged in the following electronic formats:

Produced documents will be provided as black and white, Group IV single page TIFF images, 300 DPI, named the same as the Bates number, except that Excel files will be produced in native format.

A standard Opticon image load file indicating document boundaries and location of images will accompany the images.  The fields should include Bates ID, CD Name, Path\Tiff Name, DocBreak, Document and a field denoting whether a given document has been designated "CONFIDENTIAL – CATEGORY 1 ATTORNEYS' EYES ONLY" pursuant to the Protective Order herein (noted by the letter "A" in the applicable field) or "CONFIDENTIAL – CATEGORY 2" (noted by the letter "C" in that field).

Machine generated Optical Character Recognition (OCR) data created from scanned images of hard copy documents and extracted text taken from native files will, to the extent available, be provided at a document level.  There will be one text file per document, named the same as the beginning Bates number (Document

ID) of the document.  The OCR text file for a document will reside in the same location (file directory) as the images for that document.  The text file and related metadata associated with any redacted document will exclude redacted information.

To the extent such information is available and is not privileged or subject to privacy restrictions, the following metadata fields will be provided for emails, attachments and non-email electronic files:  Subject / Re: Line (Email), File Name (Non-Email), Sent Date (Email), Received Date (Email), Created Date (All Electronic File Types), Modified Date (All Electronic File Types), Author (All Electronic File Types), Recipient (Email), CC (Email); BCC (Email); Custodian: Opened Date (Email, if available); Forwarded Date (Email, if available).

Metadata will be provided in a flat file (.txt or .dat) using standard Concordance delimiters.  Each line will begin with the fields Beg Bates and End Bates.

In addition, each party would reserve the right to request specific electronic searches of the other party's ESI.  Unless and until requested, or the completion of this case,  all parties be required  to preserve all relevant ESI (including metadata) in native format and to preserve all relevant documents.

## C.   **Bravin's Position**

Mr. Bravin anticipates obtaining from the United States Attorney's Office ("USAO") documents and evidence related to the criminal case, along with permission from the USAO to produce materials presently in Mr. Bravin's possession pursuant to a confidentiality agreement (the "Criminal Discovery").  Once the appropriate permissions have been obtained, Mr. Bravin will produce the Criminal Discovery in the same format as Mr. Bravin received the Criminal Discovery from the United States Attorney's Office.

… … …

… … …

7.    **Protective Order**

As this case specifically involves alleged misappropriation of trade secrets, and the alleged development of proprietary corporate strategies and products, the parties agree that a protective order should be entered in this case to safeguard sensitive, confidential, and proprietary information. The parties will submit a proposed stipulated protective order to the Court.

8.    **Not A Complex Case**

The parties do not consider this a complex case that should be governed by the rules set forth in the Manual for Complex Litigation.

9.    **Discovery Plan and Proposed Motion/Trial Dates**

In light of the various anticipated discovery issues identified above, the parties jointly propose the following dates related to discovery and trial.

- Fact Discovery completed by: August 31, 2013
- Expert Discovery completed by: November 30, 2013
- Final Motion Cut Off: December 14, 2013
- Pretrial Conference: January 14, 2014
- Jury Trial: February 12, 2014.

**VII.  ADR SELECTION PROCEDURE**

Pursuant to Local Rule 16-15.4, the parties desire to proceed under ADR Procedure No. 3, namely, participating in private mediation at least on or before November 1, 2012.

**VIII. TRIAL ESTIMATE**

The parties estimate a jury trial of ten (10) to fifteen (15) full court days.

… … …

… … …

… … …

… … …

… … …

Respectfully submitted,

Dated:  April 23, 2012          WEEKS, KAUFMAN, NELSON & JOHNSON

                                By:   /s/ Gregory K. Nelson
                                      Gregory K. Nelson
                                      Attorneys for Plaintiff


Dated:  April 23, 2012          FULBRIGHT & JAWORSKI L.L.P.

                                By:   /s/ James H. Neale
                                      James H. Neale
                                      Joshua D. Lichtman
                                      Ryan T. McCoy
                                      Attorneys for Defendant ARRI, Inc.


Dated: April 23, 2012           LAW OFFICES OF JAMES W. SPERTUS

                                By:   /s/ James W. Spertus
                                      James W. Spertus
                                      Ezra D. Landes
                                      Attorneys for Defendant Michael Bravin